Battle, J.,
(dissentiente.) This is an action of trespass on the case, in which the plaintiff' declares in two counts: first, for a deceit, and, secondly, for a false warranty of soundness on the sale of a horse by the defendant to the plaintiff. On the trial, there was testimony tending to show that the sale was made on a Sunday; that the defendant was a horse-dealer, and that the plaintiff' knew it. The defendant’s counsel prayed the Court to instruct the jury, that “if they should find that the ordinary calling of Easley was that of a horse-trader, and the plaintiff' knew it, and the horse was sold on a Sunday, the plaintiff could not recover.” His Honor refused to give the instruction, and there was a verdict for the plaintiff. The bill of exceptions does not state whether the sale was made in a town or in the country, in public or in private, in the presence of many persons or of few ; so that the naked question is presented, whether the contract assuming it to *367 have been made on a Sunday, was by the law of this State, void — as to either, or both, of the parties to it.
In the argument of this question, it was admitted by the counsel for the defendant, that the contract was good at the common law, but he contended that it was in violation of the first section of the 118th chapter of the Revised Statutes, and was, therefore, void as to both parties; so that neither could maintain any action upon it. The section and chapter of the act referred to, (which was in force when the contract was made) declares, “ That all and every person and persons whatsoever, shall, on the Lord’s day, commonly called Sunday, carefully apply themselves to the duties of religion and piety, and that no tradesman, artificer, planter, laborer, or other person, whatsoever, shall, upon the land or water, do, or exercise, any labor, business or work of their ordinary callings, &c.,” “on the Lord’s day aforesaid, or any part thereof, upon pain that every person so offending, being of the age of fourteen years and upwards, shall forfeit and pay the sum of one dollar.” This enactment in the Revised Statutes urns taken from the act of 1741, (see Rev. Code of 1820, ch. 30, sec. 3,) and is in very nearly the same words as the statute 29th Charles 2nd, ch. 7, sec. 1.
Upon the general principle, which has been repeatedly recognised by the courts, both of England and this State, that a conti'act made in contravention of the law, whether malum in se or malum prohibitum, cannot be sustained, it has been settled in the former country, that a contract of sale intered into on the Lord’s day, by any person in the exercise of his ordinary calling, is void. Thus, in the case of Fennell v. Ridler, 5 Barn. and Cress. 406, (11 Com. L. Rep. 261.) it was decided that a horse-dealer, who purchased a horse in the course of his ordinary business on a Sunday, could not recover on a warranty contained in the contract of sale. So, in Smith v. Sparrow, 4 Bing. Rep. 84, (13 Com. L. Rep. 351,) it was held} that an action would not lie on a contract made on a Sunday, although it was made by an agent, and although the objection was taken by the parly at whose request the contract was
*368 entered into. The case of Bloxome v. Williams, 3 Barn, and Cress. Rep. 232, (10 Com. L. Rep. 60,) lays down the same-doctrine, but Bayley, J., who delivered the opinion pf the Court said, that the party who was not acting in his- ordinary1 calling, and was ignorant, of the fact, that the other party was-so acting, might recover upon such a contract. He intimates strongly, however, that if the plaintiff had known that the defendant was acting in his ordinary calling, he would have been regarded as having aided in the violation of the law, and, for that reason, could not have sued on the contract.
It has been said in argument here, that the latter proposition of the learned Judge was a mere dictum, not necessary to the decision of the cause, and, therefore, not fully considered by him. I cannot so regard it, because the fact that the plaintiff was ignorant of the other party’s calling, was stated as an exception to the general rule, and of course- admitted the rule.
In England, the doctrine is confined to persons having an-ordinary’' calling, and acting in the course of it; Drury v. Defontaine, 1 Taun. Rep. 131; Rex v. the Inhabitants of Whitemarsh, 7 Barn. and Cress Rep. 596; Sandiman v. Breach, Ibid 100. These cases all recognise the general rule, and I think that it may be considered well established in England, that where a contract is entered into by any person in the exercise of his ordinary business on a Sunday, he cannot recover upon it, nor can the other party do so, if he knew of the fact that the first was so acting when the contract was made.- — • From a note to the American edition of Smith on contracts, 264, (marginal page 181,) it appears that provisions more or less similar to those of the statute of Charles the second exist in nearly all the States in the Union, and that contracts in contravention of them are void. Thus, in Massachusetts, no action can be maintained for a deceit in the exchange of horses on a Sunday; Robeson v. French, Metc’f Rep. 24. Nor in Vermont for a breach of warranty on such a sale; Lyon v. Strong, 6 Verm. Rep. 214. In the case of Northup v. Foot, 14 Wend. Rep. 249, which was an action upon a contract entered into *369 on Sunday in Connecticut, the Court held that it was v.eidibythe law of that State, and that neither an-, action on the case, fox" a deceit, nor in assumpsit, could be mairhtained’upon.it That-was the case of the sale- of a horse and, the suit was-brought by the vendee, which makesit direct authority in,< favor of my-view of the present case;.
If I understood the counsel: for- the plaintiff; he-did. not deny that if the present ease had; occurred, in England, his client could not have sustained the action. B.ut he insisted.that the construction of oura-et must be-different from that put outlie English, statute-,, because,.in, England, there is-an, established cburc-h, and their statute- was intended to compela better observation of Sunday by directing “that every person shall, on eveiy Lord’s day apply himself to the observation of the same, by exercising.- himself in the- duties- of piety and: time religion,” as was declared by Bayley, Judge, in the- above-mentioned case of Fennell v. Ridler. In this-State*.the counsel said, we have- no church, establishment,, and, our Bill of Rights declares “ that all men have aa unalienable right to-worship Almighty God according to the dictates of their own consciences.” (See Bill of Rights,, sec. 19..). He thence inferred that our act must be so construed as- not to enjoin upon any person the observation of Sunday as a religious duty, but only a political regulation,, and that it embraces- such acts- only as offend public decency.
I admit that we have not any church establishment and that the constitutions, both of this State and of the United States, forbid that there ever should be; but, yet it cannot be denied that ours is a Christian country, and that the constitution of North Carolina recognises the Christian religion as a part of our system of government. Without looking to other parts of it, the famous 32nd section of the Constitution expressly declares, “that no person, who shall deny the being of a God, or the truth of the Christian religion, or the divine authority of the old or new Testament, or who shall hold religious principles incompatible with the freedom and safety of the State, shall be capable of holding any office, or place of trust, or pro-
*370 fit in the civil department within this State,” (see Amendments to the Constitution, Art. 4, sec. 2). Our governors and magistrates, then, must be Christians, and it seems to me to be a necessary consequence that our government is a Christian government; and so it was undoubtedly considered to be by all the great men, who, in the convention of 1835, took part in the debate on the proposed abrogation of the 32nd section j ust referred to. (See debates of the Convention of 1835). It is well known that the Christian sabbath, sometimes called the Lord’s day, but more commonly “sunday,” is a Christian institution, and I cannot perceive any good reason why our Legislature may not direct it to be observed by any person and in any manner, which.their wisdom may suggest for the happiness of the people and the welfare of the State, saving and reserving always to every person the right to worship God according to the dictates of his own conscience. The Bill of Rights seems to recognise the duty of all persons to worship Almighty God in some manner, and only leaves the manner to be determined by their own consciences. How the compelling them to abstain from their ordinary secular business on sunday, (the day usually set apart in all Christian countries for public worship and private devotion,) can interfere with their rights of conscience, is what I cannot well comprehend. Ruffin, O. J., did not seem to think so, when he gave the reasons of the Court for the decision in the case of the State v. Williams, 4 Ire. Rep. 400. It was there held that a master was not indictable, at common law, for compelling his slaves to do the ordinary work of the farm on Sunday. But it was strongly intimated that he might have been warranted for the penalty given by the act of Assembly, upon which I am commenting. Speaking on the propriety and political necessity, of keeping one day in the week for the purposes of “public worship, relaxation and refreshment,” the learned Chief Justice says, “that the institution, wherever it has existed, has proved to be a great good — promoting private virtue and happiness among all classes, and the public morals and prosperity. It is, there'fore, fit, that every commonwealth, and especially one in *371 which Christianity is generally professed, should set apart, by law, a day for those purposes, and enforce its due observance by such sanctions as may seem adequate. By a statute in this State, the profanation of Sunday by working in a person’s ordinary calling, is punishable by a pecuniary fine, recoverable by a summary proceeding before a justice of the peace, Eev. Stat. chap. 119, sec. 1. As that statute does not make the offense indictable, it is not punishable in that mode, unless it be so at the common law.” In another part of the opinion, he thus expresses himself in relation to the Christian religion : “ In this State, however, although recognised as an existing, and as the prevalent religion, it is not, and cannot be, established by law in any form, nor as consisting of any particular doctrines, or imposing any special duties of worship, or of worship at particular places or periods. Therefore, however clearly the profanation of Sunday might be against the Christian religion, it is not, and could not here be made, merely as a breach of religious duty, an offense ; and much less can it be held an offense at common law. The Legislature, deeming it, as it does many other violations of Christian duty, detrimental to the State, may prohibit, and then it will be punishable to the extent, and in the manner pointed out by the Legislature.” He concludes his able opinion, by intimating that the Legislature might cause the observance of Sunday to be enforced by stronger measures than had been prescribed in the statute before spoken of. He says, “ but that is with the Legislature. If they think it needful, higher penalties may be laid, or the profanation of Sunday may be prohibited in general terms, and thereby it will become a misdemeanor and indictable.” In the whole of this opinion, it will be seen that Chief Justice, Buffin, did not once question the validity of the statute, nor intimate that it must be construed differently, here, from what he knew was the settled construction of the statute of 29th Charles 2nd, in England. It seems to me that the conclusion is irresistible, that the defendant, in the present case, might have been warranted for the penalty incurred by selling his horse, in the
*372 ordinary conree of his business, on Sunday. If so, the act was unlawful, and the contract of sale void ; Sharpe v. Farmer, 4 Dev. and Bat. Rep. 122; Ramsay v. Woodward, Jones7 Rep. 508; Ingram v. Ingram, 4 Jones’ Rep. 188 ; Powell v. Inman, 7 Jones’ Rep. 28. The plaintiff was, in pa/ri delicto, because, with full knowledge that the- defendant was a horse-trader, he concurred in the violation of the law,, showing his consciousness that he was doing wrong by putting a false date' to the sale-note,, dating if on Monday, instead of Sunday, the day on which it ivas in fact given. In the conclusion to which I have come upon the constitutional question involved in this case, I am glad to find myself sustained by a case decided in Pennsylvania. In Specht v. The Commonwealth, 8 Barr’s. Rep. 313, it was held (affirming the previous decision of The Commonwealth v. Wolf, 3 Ser. and Rawle’s Rep.) that the Pennsylvania Lord’s day act was not at variance with the-provision in the State Constitution, declaring the right of freedom of conscience in religious matters ; and a conviction, under the act, of one of the sect called Seventh-day Baptists, was therefore affirmed, the decision being based upon the- ground of a day of rest being necessary to- the welfare of society, and that the mere- prohibition' of secular occupation did not interfere with the rights of conscience. (See the- case- referred to in a note to the 264th page of the Am. Edition of Smith on Contracts — m.—p. 181.) Similar decisions have been made in Obi©' and South Carolina, upon similar statutes, on the same grounds. See Bloom v. Richards, 22 Ohio Rep. 387; The City Council of Charleston v. Benjamin, 2 Strob. Law Rep. 508; Sedg. on Stat. and Com.' Law, 85, in note. I think the- judgment ought tO' be reversed, and a new trial granted.
Per Curiam,
Judgment affirmed.